

U.S. Department of Justice

*United States Attorney*
*District of Maryland*

| | | |
|---|---|---|
| *Patricia McLane* | *Suite 400* | *DIRECT: 410-209-4942* |
| *Assistant United States Attorney* | *36 S. Charles Street* | *MAIN: 410-209-4800* |
| *Patricia.McLane@usdoj.gov* | *Baltimore, MD 21201-3119* | *FAX: 410-962-0717* |

December 19, 2023

The Honorable James K. Bredar
Chief United States District Judge
District of Maryland
Edward A. Garmatz United States District Courthouse
101 W. Lombard Street
Baltimore, MD 21201

      Re:    Sentencing in *United States v. Correy Cawthorn*
                 Crim. No. JKB-19-0036

Dear Chief Judge Bredar:

      The Defendant, Correy Cawthorn, is scheduled for sentencing on January 4, 2024, at 10 a.m. Mr. Cawthorn admitted to being present at the death of four individuals, and present at the attempted murders of three others as a member of Triple C, or "CCC". But these are not the only acts of violence perpetrated by members of CCC. The gang is responsible for the death of at least 18 victims between 2015 and 2020. Members also committed over a dozen non-fatal shootings, street robberies and carjackings. Mr. Cawthorn was not just a member of CCC; rather, he was a leader, organizer, and prolific champion of CCC on social media.

      CCC, like many other non-traditional gangs that plague Baltimore City, was a dangerous and deadly group that engaged in violence for violence's sake. That the group publicized these acts of senseless violence on social media along with hundreds of posts of members mocking law enforcement and flaunting their lack of respect for the law or public safety highlights the need for the Court to send a message to similarly-situated individuals in the community. A reasonable message of deterrence must be communicated to other potential offenders, that ongoing violence as part of an armed gang will be justly punished.

      Therefore, the Government's recommended sentence recognizes that individual responsibility is not measured solely by what each defendant did personally, but by conduct of the gang in which they knowingly became members. Therefore, based on the factual stipulation in the plea agreement, as well as all the evidence in this case, the Government believes a variant sentence of 420 months' imprisonment is sufficient but not greater than necessary to comply with the goals of sentencing set forth in 18 U.S.C. § 3553(a).

## I. BACKGROUND

The Government incorporates the facts in the Defendant's plea agreement (ECF No. 1241) and Presentence Investigation Report ("PSR") (ECF No. 1282). CCC was a violent criminal enterprise, of which Mr. Cawthorn became a member by at least 2014. *Id.* at ¶ 98. Each member participated in CCC to varying degrees but regardless, the details of the crimes were publicized on social media and frequently Mr. Cawthorn is captured in posts with other CCC members, many times toting the success of CCC and frequently with firearms.

In his plea agreement, Mr. Cawthorn has accepted responsibility for his participation in CCC and for the fact that CCC was a violent criminal organization. Mr. Cawthorn specifically stipulated that the following crimes were committed by CCC and that the crimes were within the scope of the his agreement: The murders of Antonio Griffin and Tereze Pinkney and the attempt murder of C.S. and A.M. in 2017; the murder of Thomas Johnson, a rival gang member, in 2017; the murder of Devonte Monroe in 2017; and the attempted murder of K.T. in August 2018, which occurred during a party putting many other lives in danger. The video included in Exhibit 1, V-1, illustrates the reckless nature of August 2018 shooting.

The parties have not specified the particular role Mr. Cawthorn played in the crimes – and the law renders Mr. Cawthorn responsible for the crimes as a member of the violent organization he knowingly joined. To be clear, the Government would point to substantial evidence that Mr. Cawthorn personally committed the shooting of the individuals listed above and in fact, Mr. Cawthorn admits to "ca[tching] his first body" at the age of 16. PSR at ¶ 98. In addition, Mr. Cawthorn possessed the firearm that killed Mr. Monroe. That said, whether Mr. Cawthorn pulled the trigger or simply supported the violent activity of this organization, he is legally responsible as a CCC member and conspirator. And he acknowledged what CCC stood for and what CCC acts members committed in the PSR. *Id.* Mr. Cawthorn admitted that "by 2014 he eventually found his way to the streets and quickly realized he needed to make a name for himself to secure 'protection and women'". *Id.* at ¶ 97.

The Government also agrees that Mr. Cawthorn has entered into a significant plea agreement that allowed the Government to save resources and protect cooperators by avoiding trial. Therefore, although the recommended sentence is a downward variant sentence, the Government strongly believes that it is appropriate. The defendant's acceptance of responsibility for his membership in CCC is significant in that it signals (the Government hopes) a break from the business of CCC. The recommended sentence also recognizes that the defendant's guilt is based on his personal participation and culpability as well as his membership in the gang which was longer and more deadly than other co-defendants.

The Government's recommendation of 35 years imprisonment is informed by its belief about Mr. Cawthorn's role in the gang and his culpability in comparison to co-defendants. The Government's position also takes into consideration the defendant's own history and background. This includes Mr. Cawthorn's leadership role in CCC, his prolific promotion of CCC on social media, his flight from, and mocking of, federal prosecution in 2019, and significant evidence that

Mr. Cawthorn orchestrated the killing of a rival drug dealer, Darius Mason, in 2019.

## II. UNITED STATES SENTENCING GUIDELINES

The Government agrees with the Sentencing Guidelines calculations in the PSR. PSR ¶¶ 24-79; 85.[1] At offense level of 43 and criminal history category I, the advisory sentencing guidelines range is life.

## III. THE RELEVANT SECTION 3553(a) FACTORS

A sentence of 420 months' imprisonment is sufficient but not greater than necessary to achieve the purposes of sentencing under Section 3553(a)(2). Mr. Cawthorn willingly became a member of a violent criminal enterprise and knowingly endorsed and supported the gang's violence through that membership. Mr. Cawthorn at most participated in, and at least was present for, the murder of four individuals and the non-fatal shooting of three others. The business of the gang and Mr. Cawthorn's own personal participation warrant the 35-year recommended sentence.

### A. Nature and Circumstances of the Offense, the Seriousness of the Offense, and the Need to Protect the Public from Further Crimes of the Defendant

The Court is quite familiar with the business of CCC from this case and from the Fourth Superseding Indictment. The violence of this organization was prolific. Mr. Cawthorn was not just a trusted member of the enterprise who was regularly present at shootings, but regularly committed the shootings and bragged about his participation.

A sentence of 420 months' incarceration is a significant sentence for Mr. Cawthorn who has been incarcerated longer awaiting trial in this matter than due to any other convictions. *Id.* ¶¶ 83-84. He will be removed from the community for a long period of time. This sentence holds Mr. Cawthorn accountable for being one of the most violent members of a violent criminal enterprise, while also recognizing his relative culpability and any mitigating circumstances.

The 420-month recommendation was a carefully negotiated resolution, but most importantly, in the Government's review, is appropriate in this case to reflect the nature and circumstances of the offense and its seriousness. The stipulation references the murder of four individuals and the attempted murders of several others. The Government could have pointed to evidence linking the defendant to other violence (referenced in the plea agreement, footnote 2, and outlined *infra*) and that the defendant personally engaged in that violence. The human toll of this violence was considerable, independently of the defendant's specific role, given that this was the conduct of a group he joined.

---

[1] The Plea Agreement's adjusted offense level differs from the PSR, although both documents arrive at the same conclusion. The Government failed to consider the victims of the June 13, 2017 murders and the attempted murders separately and therefore the Plea Agreement has an adjusted offense level of 46 rather than 47. *See* Plea Agreement ECF No. 1241 at p. 5. Regardless, due to Chapter 5, Part A (comment n. 2) the final offense level is 42. *Id.* at p. 6; PSR ¶ 79.

As discussed below, the Government believes that the recommended sentence is commensurate with the defendant's culpability relative his fellow gang members. The Government has endeavored, as well as it can, to make recommendations for the CCC defendants that balance each defendant's conduct, extent of violence, aggravating and mitigating characteristics, and general role in the gang. For Mr. Cawthorn, unlike some of the other co-defendants, the Government believes the 35-year recommendation is appropriate based on the length of his membership, his role in the enterprise, and the number of murders and attempted murders he committed.

### B. History and Characteristics of the Offender

There is no argument that Mr. Cawthorn suffered a traumatic childhood. He suffered the murder of his father, uncle, and godfather, in addition to being shot as a teenager. *Id.* ¶ ¶ 95, 97, 102. Mr. Cawthorn was adversely affected by growing up in a violent and crime ridden neighborhood leading him to choose gang protection despite strong maternal support. *Id.* ¶ ¶ 96, 98. To be sure, Mr. Cawthorn's struggles are not uncommon in Baltimore City and amongst similarly situated defendants; however, these circumstances do not justify becoming a member of a violent criminal enterprise. The Government has, nonetheless, considered the mitigating aspects of the defendant's background in its sentencing recommendation here.

####    1.    Mr. Cawthorn was a Leader of CCC

But Mr. Cawthorn was not just a member of CCC. Mr. Cawthorn did not attempt to find other fulfilment beyond the enterprise unlike other co-defendants. He dropped out of high school in the 9th grand and does not have a GED. *Id.* ¶ 111. He never held a job. *Id.* ¶ 114. He "found his way to the streets" by the age of 15. *Id.* ¶ 98. He frequently sent text messages to co-defendants stating his desire to kill others as illustrated by this message he ("C Moe") sent to co-defendant Desmond Butler ("Dezz") on July 22, 2018:



His cellphone text messages, videos, and photos echo his life choice. For example, in the photos depicted below, Mr. Cawthorn is pointing the gun in the photo on the left taken in 2017-2018; the photo on the right is a still from a video made on May 19, 2018, in which he is holding a firearm with an extended magazine and singing "we at war with 'em":

4

 

### 2. Mr. Cawthorn was a Militant Member of CCC

Mr. Cawthorn knew he risked being killed or arrested as a CCC member. Note the pictures referencing death (on the left taken in 2018) and arrest (on the right taken 2018) recovered from the download of Mr. Cawthorn's cellphone pursuant to a federal search warrant:



But before Mr. Cawthorn would be arrested or killed, he would use deadly force. Law enforcement recovered hundreds of photos of Mr. Cawthorn with firearms from Mr. Cawthorn's own phone and from the phones of other co-defendants.

For example, in the photos depicted below, on the left is a still from a video recovered from Mr. Cawthorn's cellphone recorded on May 23, 2018. Mr. Cawthorn is holding a firearm and co-defendant Tyeshawn Rivers is sitting on the steps; on the right is Mr. Cawthorn holding a firearm in a vehicle; the photo at the bottom is Mr. Cawthorn (masked) in a vehicle holding a firearm:



Mr. Cawthorn also acted against threats. On July 18, 2018, he assaulted a female he suspected of slashing his car tires. He "won" the fight by picking up his bicycle and beating her with it as depicted in the video included in Exhibit 1, V-2.

### 3.  Mr. Cawthorn has no Respect for any Authority, Especially the Law

Mr. Cawthorn held little, if any, regard for societal rules and community safety. Similarly, he distained law enforcement and the judicial system. Mr. Cawthorn had his initial appearance and arraignment in federal court on February 7, 2019. ECF No. 90. He consented to detention because he was held in Baltimore County for a non-fatal shooting in August 2018 (admitted conduct in Group 7 of the PSR (¶ 60)). ECF No. 101.

On April 11, 2019, the County released Mr. Cawthorn despite the federal detainer. Mr. Cawthorn took no action to remedy the mistake. Rather, he reveled in his freedom and mocked the Government in multiple texts and videos on social media, to include the video in Exhibit 1, V-3, posted on Instagram in May 2019 shortly before his arrest by federal agents on May 31, 2019.

6

ECF No. 164.  He also bragged about his ill-gotten freedom on Twitter several days after his release as depicted below:





Mr. Cawthorn returned to CCC lifestyle while evading law enforcement.  In May 2019 he "starred" in a video with co-defendants Desmond Butler, Dayon Jeter, Rashaud Nesmith and others, dancing, flashing, and pointing assault weapons and other firearms.  Law enforcement recovered the video from various co-defendants' cellphones pursuant to federal search warrants.  Exhibit 1, V-4.

### 4. Mr. Cawthorn Never Disavowed his CCC Membership

His distain of the legal system did not stop after his capture.  He made social media posts while incarcerated stating his distain for the Government, witnesses, and the community, including this post found on co-defendant Desean Johnson's Instagram account on May 22, 2020:



7

He kept his role as a leader of CCC while incarcerated.[2] On February 6, 2019, he posted the following letter on social media (using co-defendant Desean Johnson's Instagram account) addressed "to all the soldiers" implying he (Cawthorn) was the captain. Law enforcement recovered the letter from a group chat found on co-defendant Desmond Butler's Instagram account. Other co-defendants on the chat included Dayon Jeter, Jawaun Harris and Rashad Nesmith:



### 5. Mr. Cawthorn Committed at Least Five Murders as a CCC Member

Finally, the Government believes Mr. Cawthorn committed the murder of a rival drug dealer in addition to the four others to which he admitted. On July 29, 2018, Baltimore City police officers found Darius Mason shot one time in the head, laying in the parking lot of the Family Dollar in east Baltimore. Law enforcement recovered evidence from Mr. Cawthorn's cellphone proving his involvement in the murder. First, on July 29, 2018, at 2:21:44 a.m. Mr. Cawthorn sent a test message to co-defendant Tyeshawn Rivers, containing the GPS coordinates for the 2900 block of Christopher Avenue and the 6100 of Harford Road where the Family Dollar parking lot is located. Mr. Rivers responded, "4 mins away"; Mr. Cawthorn texted, "Ard [sic]". Mr. Mason is shot and killed shortly after this exchange.

The following day Mr. Cawthorn sent the following text and photogram of Mr. Mason (depicted on the left with large amounts of suspected marijuana vacuumed packed; on the right Mr. Mason is pictured with a "YBS" hat believed to be a rival gang) to Mr. Rivers, with the text, "& you said it wasn't worth it":

---

[2] The Government is reviewing Mr. Cawthorn's pretrial disciplinary records which contain information regarding a stabbing committed by Mr. Cawthorn in 2021 while at the Northern Neck Regional Jail. The Government may supplement this letter if substantive evidence exists.



Law enforcement mapped Mr. Cawthorn's historical cellsite location information on the night of Mr. Mason's murder. Mr. Cawthorn is at the location of the murder as depicted below:



C. **The Need to Afford Adequate Deterrence.**

To be sure, the seriousness of the crimes committed personally by Mr. Cawthorn and by CCC in general call for a life sentence. However, taking deterrence into account, a 420-month sentence is the appropriate sentence in this case. Mr. Cawthorn has never served a significant period of prison time prior to his arrest in this matter. This significant amount of incarceration is warranted because of the seriousness of the crimes he admits to committing.

Further, imposing a 420-month sentence promotes general deterrence while not being greater than necessary. This sentence tells others that if you are part of a group that commits crimes, even if you are not an active participant in those crimes, you will spend a significant

amount of time behind bars. Under all these circumstances, a 420-month sentence is the appropriate sentence in this case to reflect Mr. Cawthorn history and characteristics and to afford adequate deterrence.

## IV. CONCLUSION

For these reasons, the Government respectfully submits that variant sentence of 420-months' imprisonment would be sufficient but not greater than necessary to achieve the purposes of sentencing under Section 3553(a).

Very truly yours,

Erek L. Barron
United States Attorney

_____/s/_____
Patricia McLane
Michael C. Hanlon
Assistant United States Attorneys

# Exhibit 1 is a Video