<pre>
                    UNITED STATES DISTRICT COURT
                     FOR THE DISTRICT OF MARYLAND
                            (Northern Division)

UNITED STATES OF AMERICA    :
                            :
         Plaintiff,         :
                            :
v.                          :    Case Number: 19-CR-0036 JKB
                            :
CORREY CAWTHORN,            :
                            :
         Defendant.         :
                            :
</pre>

## DEFENDANT'S SENTENCING MEMORANDUM

Comes now the Defendant Correy Cawthorn, through counsel and pursuant to *Fed.R.Crim.P.* 32 and 18 USC §3553(a). He submits the following memorandum for the court's consideration prior to his sentencing.

### *Procedural Posture*

Mr. Cawthorn is scheduled for sentencing on January 4th, 2024 before the Honorable James K. Bredar.

### *Comments on the Pre-Sentence Report*

**PART A. THE OFFENSE**

Perhaps the most important point in this section is the government's agreement to limit itself to a sentence recommendation of no more than 420 months.

**PART B. THE DEFENDANT'S CRIMINAL HISTORY**

Mr. Cawthorn's only adult convictions occurred when he was 18 years old and both involve driving offenses (para 83 and 83). To be more precise, riding a dirt bike on a public road. Mr. Cawhorn strongly objects to the listing of "Other Alleged Criminal Conduct" beginning on page 13. This is a listing of purported juvenile offenses that resulted in findings of not guilty, dismissals, acquittals or were otherwise nolle-prosed. Some of these alleged events occurred when Mr. Cawthorn was only 14 years old and all pre-date Mr.

Cawthorn's twentieth birthday. As a matter of fairness, if not public policy, the defendant argues that these alleged offenses should not enter the court's calculus of consideration at the time of sentencing. Indeed, in its most recent proposed policy amendments, the United States Sentencing Commission is considering an amendment to Section §4A1.1 that would delete all references to juvenile sentences as part of the criminal history calculation. [1] Given that discussion on **convictions**, why should dismissed charges be considered by this court?

### *Guideline Range Consideration*

Ms. Cawthorn does not dispute his criminal history category or the offense level determination.

### *History and Characteristics of the Accused*

The Pre-Sentence Report gives a fair, if not complete description of Correy's childhood experience. Perhaps the most notable factor in his development was the absence of a positive adult male role model. His natural father was openly violent to his mother and would beat her in front of Correy.[2] Without the love, guidance and guard rails that a responsible male provides, young boys and male adolescents tend to run amuck. This is particularly true when they group without the kind of guidance provided in a youth sports setting, the Boy Scouts or a volunteer organization.

Correy is now 25 years old, but has experienced a climate of anxiety, depression and anger resulting from an environment and conditions that he did not choose. He lives in what

---

[1] https://www.ussc.gov/about/news/press-releases/december-14-2023 (See Policy button, Proposed Amendments; Reader Friendly version top of page 9) Option 2 would amend §4A1.2(d)(2) to exclude all juvenile sentences from being considered in the calculation of the criminal history score. It also includes bracketed language providing that such sentences may be considered for purposes of an upward departure under §4A1.3 (Departures Based on Inadequacy of Criminal History Category (Policy Statement)). In addition, Option 2 would amend §4A1.2(k)(2)(B) to explain how the applicable time period for revocations would work in light of the proposed changes. It also would amend §4A1.2(c)(2) to delete the reference to "juvenile status offenses and truancy" and amend §4A1.2(f) to delete the reference to "diversion from juvenile court." Finally, Option 2 would make conforming changes to the Commentary to §§4A1.2 and 4A1.1.
[2] PSR para 100

can only be described as an urban war zone.[3]  He has constant anxiety for the safety of his mother and siblings.  This unrelenting tension explains his decision to join a group that would not only provide him with protection, but extend that to his immediate family.

### *Nature and Circumstance of the Offense*

There is no justification for violence to control a drug market or place a community in fear.  However, it is worth repeating that Correy Cawthorn had no say in where he was born or raised.  His mother worked full time, leaving work as late as 7:00 pm.  His father, as well as father figures, were absent during critical points in his development. *  His social development took place more in the streets than in the household, school or a church.  Hence, the deviation in his moral compass.

### *Deterrence Value*

**Specific deterrence** can be achieved with a significant sentence that leaves Mr. Cawthorn with a real chance at rehabilitation and future contribution to his community.  However, a sentence of life may preclude both, as there would be nothing for him to look forward to or an incentive to reform.  On the question of **general deterrence**, this case involves street gang violence and drugs.  In terms of addressing gang violence in Baltimore City, Mr. Cawthorn's incarceration will not resolve the problem

### *Protecting the Public*

Mr. Cawthorn's incarceration is not likely to make a difference in the illegal drug trade or the violence that necessarily comes with it.  The social and economic factors that contributed to Correy's circumstance will not be changed by his being removed from the streets.  Real change probably requires a more limited access to firearms; strict enforcement of truancy laws; social intervention; rehabilitation programs and loss of parental custody rights, as a

---

[3] PSR para 98

start.[4]

With respect to the drug problem, the history of the war on drugs, since its inception in 1972, reveals an unqualified failure.[5]  The public would be better served by legalizing, regulating and taxing the current illegal drug industry, as has happened with alcohol, pharmaceuticals, and tobacco.  Incarcerating offenders pursuant to a failed policy breaks up homes and ensures an ever-growing population of inmates for the correctional industrial complex.  The quantity, quality and availability of drugs is greater now than it ever has been.  This despite the fact that the United States now incarcerates more people than any other country in the world and the majority of those are non-violent drug offenders.[6]   Mr. Cawthorn's incarceration is not likely to make a difference in the illegal drug trade or the violence that necessarily comes with it.

## *Fines and Special Assessment*

Ms. Cawthorn was represented by court-appointed counsel.  He has no savings, investments holdings or realty to sell.

## *Need for the Sentence Imposed – A Just Punishment*

Congress has mandated that the court shall impose a sentence sufficient, but not greater than necessary to reflect the seriousness of the offense, promote respect for the law and act as a deterrence.  The questions before the court are: how much deviation is there in Correy's still developing brain: how might it be corrected: and how long will it take?  Correy's chronological age is 25, but his mental age may be younger.  The offenses for which he is

---

[4] https://ojjdp.ojp.gov/sites/g/files/xyckuh176/files/jjbulletin/9808/chart.html
[5] Tharoor, Ishaan, "Report: The Global War on Drugs Has Failed. Is It Time to Legalize?", *Time*, June 03, 2011. Retrieved 2011-06-03
George P. Shultz and Paul A. Volcker (11 June 2011). "A Real Debate About Drug Policy". *The Wall Street Journal*.
[6] http://en.wikipedia.org/wiki/List_of_countries_by_incarceration_rate
http://www.nytimes.com/2008/04/23/world/americas/23iht-23prison.12253738.html?pagewanted=all&_r=0

being indicted in federal court occurred during the ages of 17 – 20. That fact, coupled with other mental health issues that are submitted as attachments under seal, should weigh heavily in determining whether Correy can be rehabilitated and if so, over what period of time. [7]

The defense respectfully suggests a sentence of not more than 300 months, with credit for time served as being sufficient to address the question of a just punishment. A certain release date, gives him something to look forward to, as well as an incentive to conform while in prison and reform so as to successfully transition back into the community.

*Prayer*

WHEREFORE, Mr. Cawthorn respectfully requests that the court consider:

1. His mental health history and educational challenges.

2. His need for vocational training and skills development; and

3. That a fine not be imposed.

4. That the court recommend he be housed at Cumberland, Maryland or FCI Petersburg, Virginia.

5. That the following individuals be allowed to address the court before sentencing: his mother; Vonda Cole; his Uncle Michal Chester; family friend Shanta Whitworth be allowed to address the court before sentencing.

6. For such other and further relief under 18 USC 3553[8]; the interest of justice and the

---

[7] 25Nov19 Mental Health Evaluation
[8] 3553. Imposition of a sentence
 (a) **Factors To Be Considered in Imposing a Sentence.—** The court shall impose a sentence sufficient, but not greater than necessary, to comply with the purposes set forth in paragraph (2) of this subsection. The court, in determining the particular sentence to be imposed, shall consider—
(1) the nature and circumstances of the offense and the history and characteristics of the defendant;
(2) the need for the sentence imposed—

(A) to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense;
(B) to afford adequate deterrence to criminal conduct;
(C) to protect the public from further crimes of the defendant; and
(D) to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner;
(3) the kinds of sentences available;
(4) the kinds of sentence and the sentencing range established for—
(A) the applicable category of offense committed by the applicable category of defendant as set forth in the guidelines—
(i) issued by the Sentencing Commission pursuant to section 994 (a)(1) of title 28, United States Code, subject to any amendments made to such guidelines by act of Congress (regardless of whether such amendments have yet to be incorporated by the Sentencing Commission into amendments issued under section 994 (p) of title 28); and
(ii) that, except as provided in section 3742 (g), are in effect on the date the defendant is sentenced; or
(B) in the case of a violation of probation or supervised release, the applicable guidelines or policy statements issued by the Sentencing Commission pursuant to section 994 (a)(3) of title 28, United States Code, taking into account any amendments made to such guidelines or policy statements by act of Congress (regardless of whether such amendments have yet to be incorporated by the Sentencing Commission into amendments issued under section 994 (p) of title 28);
(5) any pertinent policy statement—
(A) issued by the Sentencing Commission pursuant to section 994 (a)(2) of title 28, United States Code, subject to any amendments made to such policy statement by act of Congress (regardless of whether such amendments have yet to be incorporated by the Sentencing Commission into amendments issued under section 994 (p) of title 28); and
(B) that, except as provided in section 3742 (g), is in effect on the date the defendant is sentenced.[1]
(6) the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct; and
(7) the need to provide restitution to any victims of the offense.
(b) **Application of Guidelines in Imposing a Sentence.—**
(1) **In general**
Except as provided in paragraph (2), the court shall impose a sentence of the kind, and within the range, referred to in subsection (a)(4) unless the court finds that there exists an aggravating or mitigating circumstance of a kind, or to a degree, not adequately taken into consideration by the Sentencing Commission in formulating the guidelines that should result in a sentence different from that described. In determining whether a circumstance was adequately taken into consideration, the court shall consider only the sentencing guidelines, policy statements, and official commentary of the Sentencing Commission. In the absence of an applicable sentencing guideline, the court shall impose an appropriate sentence, having due regard for the purposes set forth in subsection (a)(2). In the absence of an applicable sentencing guideline in the case of an offense other than a petty offense, the court shall also have due regard for the relationship of the sentence imposed to sentences prescribed by guidelines applicable to similar offenses and offenders, and to the applicable policy statements of the Sentencing Commission.

public good demands.

Respectfully submitted,

By:   <u>/S/ Anthony D. Martin</u>

Anthony D. Martin, Esquire   5224
6411 Ivy Lane, Suite 304
Greenbelt, MD 20770
(301) 220-3700; (301) 220-1625

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that a copy of the foregoing sentencing memorandum was sent electronically and/or by facsimile to the following person and address indicated below:

**Patricia Corwin Mclane; AUSA**
United States Attorney s Office
36 S. Charles Street
Baltimore, MD 21201

December 20, 2023

/S/
Anthony D. Martin